UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| LORETTA MARTIN, ) | Case No. CV 16-08167-AS |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND** |
| ) | |
| ) | **ORDER OR REMAND** |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL,[1] Acting ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PROCEEDINGS**

On November 2, 2016, Plaintiff filed a Complaint seeking review of the denial of her application for Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 17-18). On April 13, 2017, Defendant filed an Answer along with the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Caroyln W. Colvin in this case. See 42 U.S.C. § 205(g).

1

Administrative Record ("AR"). (Docket Entry Nos. 30-31). The parties filed a Joint Stipulation ("Joint Stip.") on September 7, 2017, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 36).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures in Social Security Case," filed November 16, 2016 (Docket Entry No. 15).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On January 23, 2013, Plaintiff, formerly employed as housekeeper and stocker at a retail store (see AR 56-57, 272-74, 316-19), filed an application for Supplemental Security Income, alleging a disability since August 21, 2009. (AR 228-29).

On January 28, 2015, the Administrative Law Judge ("ALJ"), Jesse J. Pease, heard testimony from Plaintiff (who was represented by counsel) and vocational expert Victoria Rae. (See AR 55-70). On February 11, 2015, the ALJ issued a decision denying Plaintiff's application. (See AR 25-33). After determining that Plaintiff had severe impairments -- "degenerative disc disease, lumbar spine, L4-5; mild obesity; asthma; lumbar spine sprain; carpal tunnel syndrome, right hand, mild; patellar tendinitis and chondromalacia, left knee; and osteochondroma of the

right ankle" (AR 27-28)[2] -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments (AR 28-29), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work[4] with the following limitations: can perform postural activities occasionally; can use the right dominant hand frequently; and cannot be exposed to excessive air pollutants. (AR 29-32). The ALJ then determined that Plaintiff was able to perform past relevant work as a housekeeper/cleaner as actually performed and as generally performed (AR 32-33), and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 33).

Plaintiff requested that the Appeals Council review the ALJ's Decision. (See AR 17). The request was denied on September 6, 2016. (See AR 1-5). The ALJ's Decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

---

[2] The ALJ found that Plaintiff's impairments of mild chondromalacia of the right knee and postpartum depression were nonsevere. (AR 27-28).

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

3

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ failed to properly: (1) assess the opinion of the orthopedic consultative examiner; and (2) assess Plaintiff's credibility. (See Joint Stip. at 4-9, 14-20, 24-25).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address Plaintiff's first claim of error.

**A. The ALJ Did Not Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons reasons for rejecting Plaintiff's testimony about her symptoms. (See Joint Stip. at 15-20, 24-25). Defendant asserts that the ALJ properly considered Plaintiff's testimony and provided valid reaons for discounting Plaintiff's testimony. (See Joint Stip. at 20-24).

Plaintiff made the following statements in an "Exertion Questionnaire" dated August 5, 2011[5]:

> She lives alone/with family (children) in an apartment. She is not able to work because she just lies in bed, and she sometimes cannot even get to the restroom. On an average day, she goes on walks, cleans and watches television. She walks for 2 to 3 miles,[6] which takes about 2 hours, but causes her body, especially her back and knees, to hurt. She climbs stairs -- 12 steps -- but it is painful (she has to climb stairs to get to school and stores). She does not lift anything but blankets and other things lying around her house. She carries the following items: a bag for the store (1/2 minute, once a week); a plate (10 feet, every day); and a laundry basket (20 feet, once a week). When asked whether she does her own grocery shopping, she checked off "yes" and "no." She cleans her own home, by vaccuum, washing dishes, picking up and making her bed, all which take 3 hours. She has difficulty finishing her housework. She does not drive a car, work on cars, or do yard work. She sleeps for 4 hours, and

---

[5] Plaintiff's statements in the various reports are difficult to decipher because her handwriting is not very legible and because her responses to questions sometimes are not clear. Plaintiff acknowledges that she is not able to write or spell well (see AR 335).

[6] When summarizing Plaintiff's testimony in this "Exertion Questionnaire," the ALJ wrote that "[s]he stated she was able to walk for two to three minutes." (AR 29).

5

requires 2 naps a day for about an hour. She uses a brace for her hand and a splint. (AR 276-78).

Plaintiff made the following statements in an undated "Pain Questionnaire":

> She has pain in her right knee, lower back, left hand and right shoulder, and the pain spreads to her arms and legs. She gets pain when she does too much walking, sitting or carrying, and lasts for 2 hours. Resting for 1 hour relieves her pain. For 2 months, she has taken prescribed Acetaminopen Codeine 3 (which relieves the pain in an hour), 2 to 3 times, once every 6 years. The medication does not cause any side effects. Surgery has not been scheduled to attempt to relieve the pain. Her usual daily activities are walking, shopping and household chores. The pain prevents her from doing past activities like running, jogging and playing outdoors with her children, i.e., basketball and football (she does not recall when the pain first began to affect her activities). She is able to do errands such as going to the post office or grocery store without assistance (she uses public transportation), and she is able to do light housekeeping chores (i.e., dusting, cooking, etc.) without assistance. She is able to walk 3 miles outside her home. She is able to stand for 20 to 30

minutes at a time and to sit for 30 to 40 minutes at a time. (AR 298-300).

Plaintiff made the following statements in a "Pain Questionnaire" dated March 31, 2013:

> The pain is located on her neck, knees, back and right hand/arm and spreads to her legs, chest, shoulders and arms. The pain began 6 months to a couple of years ago, and occurs every day or every other day. The pain is caused by walking, climbing stairs, some cleaning, and carrying. The pain lasts for 2 to 4 hours. Resting for about 1/2 hour relieves the pain. She has been taking prescribed Hydrocodone/Acetaminophen (4 pills a day) every day for 3 to 4 months. The medicine relieves the pain in about 30 minutes. The medicine does not have any side effects. No surgery is scheduled to attempt to relieve the pain. She wears a wrist brace and does other things to assist in relieving the pain. Her usual daily activities are walking, shopping and driving. She cannot do past activities like driving, running, jogging, and walking far because of the pain. The pain first started to affect her activities more than 5 years ago. She has to stop an activity because of pain after 5 minutes. She is able to do errands such as going to the post office or grocery store without assistance (she uses public transportation), and she is able

to do light housekeeping chores (i.e., dusting, cooking, etc.) without assistance. She is able to walk 5 miles outside her house. She is able to stand 30 minutes at a time, and she is able to sit for 90 minutes at a time. (AR 313-15).

Plaintiff made the following statements in a "Function Report - Adult" dated August 2013 (see AR 328-35).

She lives alone/with family (her children) in an apartment. She cannot work because she cannot stand or sit for a long period of time (because of her back), because of her hurt right hand, and because of a possibly broken ankle. (AR 328, 335).

She takes care of her children; she feeds them, takes them to school, and bathes them. She does not take care of pets. With respect to her daily activities, she washes her face/teeth, bathes her children, cooks breakfast, does housework, watches television, sits on a sofa and lies down. (See AR 329).

As a result of her impairments, she no longer is able to run, jog, climb, or play at the park with her children. Her impairments affect her sleep; she cannot sleep, she has pain in her back and legs, and she ends up playing "lots of

mindgames." Her impairments affect her abilities to dress (it takes her about 45 minutes instaead of 10 minutes), to care for her hair (her arm and hand hurt), and to use the toilet (she gets stuck sitting on the toilet). She needs special reminders to take care of personal needs and grooming and to take medicine (she leaves messages on her cell phone in order not to forget). (See AR 329-30).

She prepares her own meals (i.e., sandwiches, complete meals) daily (3 1/2 hours). Her impairments have affected her cooking since she drops things. Her househould chores are laundry (4 hours, 2 times a week) and cleaning up (4 hours daily). She goes outside, walking and using public transportation, 2 to 3 times a week. She can go out alone, but does not drive. She shops in stores, by phone and by mail for food, children's clothes, school supplies, bedding, and kitchen and bath items (2 to 3 hours, 2 times a month). She is able to pay bills, count change, handle a saving account, and use a checkbook or money orders. (See AR 330-31).

Her hobbies and interests are running, jogging, reading (every day), playing sports, playing with her children (3 hours daily), and watching television (4 1/2 hours daily) Since her impairments began, she cannot run or jog, and she does not play well with her children because of her pain (but

"she still do[es] what a mother has to do"). She spends time with others 3 times a month, going out to eat, going to malls, and talking on the phone once a day, and getting together with a friend once a week. She goes to church and her mother's and sister's house 25 times a month, but needs to be accompanied and to be reminded to go places. (See AR 332-33).

Her impairments affect her lifting (she can lift only 10 pounds), squatting, bending, standing, reaching, walking, sitting, kneeling, seeing, understanding and using hands. She can walk for 10 to 20 minutes before he has to rest, and then must rest for 30-45 minutes before she can resume walking. She can pay attention for 5 to 10 minutes. She cannot finish what she starts. She cannot follow written instructions. She cannot follow spoken instructions very well; she has to be told 3 to 4 times. She does not get along with authority figures very well when they are wrong or lie to her. She has never been fired or laid off from a job because of problems getting along with other people. She does not handle stress very well; she just goes for a walk, takes a long shower, plays music and cries. She does not handle changes in routine well. She uses a cane, a prescribed brace/splint, and prescribed glasses. (See AR 333-34).

Plaintiff made the following statements in a "Pain Questionnaire" dated September 13, 2013:

> Beginning in August 2008, she has had pain in her lower back, right shoulder, knees and right hand. The pain is an achey, stabbing sharp pain, which spreads to her neck, up her back and down to her feet. The pain causes her back to lock and her knees to go out so she cannot walk. Every day she has the pain, which generally lasts 2-4 hours. Walking is one activity that brings on the pain. Because of the pain she can no longer run, jog, hold things (i.e., at the market), or play with her children at the park. She puts on hot packs, takes long, hot baths, and wears a brace to relieve the pain. (AR 335-37).

Plaintiff testified at the January 28, 2015 administrative hearing as follows (see AR 52-65):

> She completed the 11th grade. She has five children ranging from 20 years old to 2 years old (20, 18, 14, 7 and 2), and only the 20-year-old does not live with her. She does not have to do all the cooking and cleaning; her 18-year-old and her 15-year-old children (both of whom have disabilities) help her. Her last job was as a full-time hotel housekeeper around 2009. She worked there from July 2007 to August 2009,

11

when she got hurt and was told not to come back. Prior to then, she worked for a couple of years as a stocker at a retail store. She is not able to work because of a bad back, a right broken ankle (injured in a car accident), a right dislocated shoulder (injured during a fall), carpal tunnel in her hands (but worse in her right hand), a right knee issue (injured during a fall; her right knee issue exacerbated her back injury); and a head injury (injured during a fall 3 weeks earlier). She takes medicine (a pump) for asthma. (See AR 55-61, 63-67).

She can walk for about 5 minutes before she has to stop and rest. She can sit for about 3 minutes before she needs to change position, i.e., stand up, walk a little. She lies down when her back starts to really hurt. She can lift 15 to 20 pounds. She sometimes picks up her 2-year-old child who weighs 26 or 27 pounds ("because that's what a mother needs to do, even though she has pain"). (See AR 61-63).

In 2007, she was told about having a surgery on the back of her neck (but she did not proceed with it because a co-worker got worse following a shoulder and arm surgery). She was also told about having a surgery on her hand and/or wrist. Thirty years ago, she was told about having a surgery on her

ankle (which she decided not to do because she thought it would heal on its own). (See AR 63-64).

When asked whether she has any psychological problems, she stated that she cannot remember a lot of things (she uses her phone to remind her of dates of things like a hearing), and that she reads and writes maybe like an eighth-grader. (See AR 64-65).

After briefly discussing Plaintiff's testimony at the administrative hearing, the Exertional Questionnaire, the Pain Questionnairs, and the Adult Function Report (see AR 29-30), the ALJ addressed Plaintiff's credibility as follows:

> The undersigned finds the claimant's allegations concerning the intensity, persistence and limiting efects of her symptoms are less than fully credible. The allegations of debilitating pain are inconsistent with the objective medical evidence and the claimant's admitted activities, which indicates an attempt by the claimant to exaggerate the severity of her symptoms. The claimant admitted she was able to walk (up to five miles) and use public transportation, do some household chores, prepare meals, and go out alone. These tasks are within the residual functional capacity assessed herein, and the physical and mental abilities and social

interactions required in order to perform those activities are the same as those necessary for obtaining and maintaining employment. Furthermore, as mentioned earlier, the record reflects work activities after the alleged onset date. The record showed the claimant worked in 2013 (Ex. 9D). Although that work activity does not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (AR 29-30).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms

14

alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not entirely credible.[7]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony

---

[7] The Court will not consider reasons for finding Plaintiff not entirely credible (see Joint Stip. at 21-23) that were not given by the ALJ in the Decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); and Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

15

is not credible and what facts in the record lead to that conclusion"); Laborin v. Berryhill, 867 F.3d 1151, 1154-54 (9th Cir. 2017)(stating that the boilerpate language that a claimant's "statements concerning the intensity, persistence and limiting effects of [the claimant's] symptoms are not credible to the extent that are inconsistent with the RFC" "does not . . . add anything to the ALJ's determination of either the RFC or the claimant's credibility.").

Second, the ALJ's partial discrediting of Plaintiff's testimony based on her ability to perform certain daily activities, such as walking, using public transportation, doing some household chores, preparing meals, and going out alone, was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

It is not clear whether the ALJ considered Plaintiff's testimony about her limited abilities to perform such daily activities (see AR 276 [Plaintiff testified that it took her about 2 hours to walk 2 to 3 miles, and that walking caused her body to hurt all over], 298 [Plaintiff testified she feels pain when she walks too much], 313

16

[Plaintiff testified that walking caused her pain], 333 [Plaintiff testified she can walk for 10 to 20 minutes before having to stop and rest], 61-62 [Plaintiff testified that she could only walk for 5 minutes before having to stop and rest], 277 [Plaintiff testified it takes her 3 hours to clean her home, wash dishes, pick up, and make her bed], 278 [Plaintiff's testimony that she has difficulty finishing her housework], 60 [Plaintiff's testimony that she has two of her children help her with the cooking and cleaning], and 330 [Plaintiff's testimony that it takes her 3 1/2 hours to prepare a meal). Moreover, although, as noted by the ALJ, Plaintiff did testify she can walk up to 5 miles (see AR 300 [3 miles], 315 [5 miles]), Plaintiff was not asked about those statements or whether (particularly in light of Plaintiff's other testimony about her walking limitations) she properly understood the questions being asked (i.e., the distance she was able to walk "outside [her] home") at the administrative hearing. Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with her testimony regarding her limitations. See Reddick, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Third, to the extent that the ALJ found that Plaintiff was not entirely credible based on the fact that Plaintiff worked in 2013, that

17

reason was not clear and convincing. The ALJ relied on a record reflecting that Plaintiff worked at the Salvation Army in 2013 and earned a total of $ 748.00. (AR 267). However, at the administrative hearing, the ALJ did not ask Plaintiff what she did at the Salvation Army in 2013. Moreover, the ALJ failed to articulate how Plaintiff's apparently minimal work at the Salvation Army in 2013 affected the credibility of her testimony concerning the severity of her pain and symptoms.

Fourth, although the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, the lack of supporting objective medical evidence cannot, by itself, support an adverse credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998). In addition, the ALJ failed to specifically identify what medical evidence was inconsistent with Plaintifff's testimony. See Brown-Hunter v. Colvin, 806 F.3d 497, 494 (9th Cir. 2015).

**B. Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings,

18

or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[8]

---

[8] The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's error in failing to properly assess the opinion of the orthopedic consultative examiner (see Joint Stip. at 4-9, 14-15). Because this matter is being remanded for further consideration, this issue should also be considered on remand.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 10, 2017

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE